REVERE RUBBER CO. v. CONSOLIDATED HOOF PAD CO.

(Circuit Court, S. D. New York. June 16, 1905.)

No. 7,956.

1. PATENTS—INVENTION AND INFRINGEMENT—HOOF-PADS.

The Kent patent, No. 646,148, for a hoof-pad intended for use between a horse's hoof and the shoe, and having a ventilating part or chamber in the center, was not anticipated, and discloses invention, and is not invalid for prior public use. Claims 1, 2, 5, and 6 also *held* infringed.

2. SAME—EVIDENCE OF INVENTION—SUCCESS OF ARTICLE.

The commercial success and success in actual use of a patented article is evidence of patentable invention.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 39.]

In Equity. Bill in equity for injunction restraining alleged infringement of United States letters patent No. 646,148, issued March 27, 1900, to Elizabeth Kent and Roscoe R. Bell, assignees of the alleged inventor, William J. Kent, for hoof-pad. Application filed July 26, 1899.

Arthur C. Fraser and Joseph A. Stetson, for complainant.

James Harold Warner (Clarence G. Galston, of counsel), for defendant.

RAY, District Judge. Claims 1, 2, 5, and 6 of the patent in suit only are in question. The patent is for a hoof-pad, bears date March 27, 1900, and is No. 646,148. The hoof-pad in question aims to cushion the foot of the horse against the shocks of travel upon hard roads and pavements, and to prevent direct contact between the hoof and the shoe. It is claimed that these hoof-pads will pre-

serve a natural and healthful condition of the hoof, and prove light
and comfortable in use. The patent in suit provides a pad con-
taining a thin, yielding portion to intervene between the hoof and
the shoe; a thick heel-cushion for crossing the frog of the foot,
and for supporting the heels at the rear of the shoe when a three-
quarter shoe is used; a flexible downwardly extending center for
filling the space within the shoe beneath the sole of the foot; an
air-chamber under the center of the foot, and between it and the
pad; means for supplying air to and expelling it from such air-
chamber; a ring-like leather attacher covering the outer edge of the
body of the pad, and having an aperture opposite to, and of approxi-
mately the full area of, the air-chamber; and a socket for fitting
the frog of the foot; and a stiffener for resisting expansion or con-
traction of the hoof or of the pad. These pads may be formed
of any desired materials, but the patentee states:

> "I prefer to construct it with a bottom face of rubber or rubber composi-
> tion, and with a top face or re-enforce of leather, fibrous, or textile material
> to form an attacher cut out at the center; the two being attached by stitches,
> cement, or otherwise, and the stiffener being imbedded in the rubber during
> molding of the latter."

He further says that the re-enforce or attacher covers the outer
edge of the pad-body, and has an aperture opposite to, and approxi-
mately the full area of, the air-chamber. He also states that the
pad is thus held against movement relatively to the hoof, but leaves
the hoof free and exposed to the air. It is claimed in the specifica-
tions that the heel-cushion will cushion all heel shocks, and remove
the danger of the formation of corns on this part of the hoof, and
the central pneumatic portion will conform to the irregularities of
the adjacent portion of the roadway, and give a firm grip against
either forward or rearward or lateral slipping. It is further claimed
that this hoof-pad removes all danger of lodgment of gravel or for-
eign matter against the sole of the hoof. It is also stated that the
sole of the hoof will be constantly ventilated, and practically out
of contact with any substance, while the bearing-strip between the
shoe and the hoof will both protect the latter from shocks from the
shoe, and save it from direct contact with the shoe. The specifica-
tions also state "that the invention is not limited to the particular
details of construction, arrangement, or combination of features set
forth as embodying its preferred form, since it can be employed in
whole or in part, according to such constructions, arrangements, or
combinations of features as circumstances or the judgment of those
skilled in the art may dictate, without departing from the spirit of
the invention."

The claims in issue read as follows:

> "(1) In hoof-pads, the combination with a bearing-strip for receiving the
> sole of the hoof, of a hollow central portion for covering the sole of the foot
> inwardly of such bearing-strip, and a re-enforce on said bearing-strip extend-
> ing around said hollow portion, and having an open center.
>
> "(2) In hoof-pads, a body for covering the sole of a hoof, having a bearing-
> strip for contacting with the edges of the sole, a cavity under the center of the
> sole, and a leather re-enforce on said bearing-strip, extending around said
> cavity, and having an open center."

"(5) In hoof-pads, a flexible body adapted to be fastened to the sole of a hoof, and having a pneumatic chamber open at its upper side beneath the hoof, and a ring-like leather attacher connected to and covering the outer edge of said body, and having an aperture opposite and of approximately the full area of said chamber, whereby the air-chamber is in direct communication with the face of the hoof.

"(6) In hoof-pads, a body for contacting with the sole of a hoof, having an elastic downwardly bulging portion beneath the center of the hoof, and a confined air-chamber open at top under the hoof and within such portion, and a ring-like leather attacher connected to and covering the outer edge of said body, and having an aperture opposite and of approximately the full area of said chamber, whereby the hoof itself constitutes the sole top wall of said chamber."

The complainant is now the owner of the patent in suit. It is shown by the evidence that this pad met with great success in the market, and is practically very useful. It affords ventilation, reduces concussion, prevents slipping and forging, and is durable. It solves the problem, it is claimed, of applying a leather sole with a pneumatic pad. There was a pad known as the "Sheather Pad," which had no leather sole, and this brought the rubber part of the hoof-pad directly against the foot of the horse. There is evidence that some horseshoers refused to use the Sheather pad, because it brought the rubber directly against the foot. There is also evidence that rubber directly against the foot of the horse has an unhealthy effect, and draws the foot of the horse, the same as it will that of a human being. It appears from the file wrapper that claims 2, 5, and 6 were limited to a leather re-enforce or attacher, and that the claims 1, 2, 5, and 6 are limited to such re-enforce or attacher having an open center, so that the air-chamber is opened at its upper side beneath the hoof. These were inserted after the application was filed, and are to be given their full force and effect. The claims in suit were allowed after amendment, having been rejected as first presented upon certain patents, to which attention has been called on the final hearing, viz.: Hale patent, No. 28,473; Fanning patent, No. 489,896; Hallanan patent, No. 586,030; Jarvis patent, No. 478,435; Sheather British patent, No. 17,911 of 1890; Sheather British patent, No. 20,347 of 1891.

It has been necessary in the consideration of this case, owing to the nature of the defense, and the large number of patents urged upon the consideration of the court, to examine them all, with a view to ascertaining the state of the prior art. The study of the prior art is interesting, but it would not be profitable to detail it here. I find and hold that the defense of prior public use or sale has not been proven. It is well settled, and the court will not stop to cite cases, that the defense of prior public use or sale must be proven beyond a reasonable doubt. It must be conceded that the evidence in this case is somewhat conflicting. In patent cases we find conflicting evidence usually and almost invariably as to the merits of the patent, as to prior use when that is claimed, as to anticipation when that is claimed, and as to utility when want of utility is alleged, and as to nonpatentability when that defense is alleged. A large number of exhibits have been displayed before the court. The court has also had considerable experience with these pads,

and is perhaps justified in taking that experience into consideration in passing judgment on the utility of the pad in suit.

This court cannot sustain the alleged defense of aggregation. The elements of the patent in suit co-operate and coact so that they produce new and useful results. There is a difference, and a substantial difference, between the combination of elements in the patent in suit and the combination found in the other pads to which attention has been called. Those who have had experience with horses and the shoeing of horses understand how important the shape and fit of the shoe is. It is easy to lame a valuable horse by a slight misfit of the shoe. It is as important, and in fact more important, to have the shoe or hoof-pad for a horse of a closer and better fit and form than in the case of a human being. The man or woman can tell "where the shoe pinches." The defect can be remedied, if any, in the shoe in use, in the next one made or purchased. With the horse it is different. The horse may show by its mode of travel or by lameness that there is trouble somewhere, but just where, only experts can tell, and oftentimes their skill fails. The proof of a good horseshoe or hoof-pad is in the using, and in its success in actual use.

This court finds and holds that there was patentable invention in the so-called Kent pad, the patent in suit. It is, of course, true that the success of a patented article does not of itself prove patentability, but commercial success and success in actual use is evidence of patentability. See Gandy v. Main Belting Co., 143 U. S. 587, 12 Sup. Ct. 598, 36 L. Ed. 272; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658. The established fact that the Kent pad has driven out others and gone into general use is evidence that it involved invention. Kinloch Tel. Co. v. Western Electric Co., 113 Fed. 659, 51 C. C. A. 369. See, also, Packing Co. v. Magowan, 27 Fed. 362, affirmed in 141 U. S. 332, 12 Sup. Ct. 71, 35 L. Ed. 781.

In this case it cannot be denied that the defendant has infringed the complainant's patent. It has closely copied it—so closely that the court is compelled to find infringement.

The Sheather pad of 1890 and the Sheather pad of 1891 do not show or establish anticipation.

The complainant's pad is declared valid. Infringement by the defendant is found. The complainant is entitled to a decree for an injunction and an accounting.