## WILLIAMS BROS. AIRCRAFT CORPORATION v. GOULD–MERSEREAU CO. *

(Circuit Court of Appeals, Second Circuit. December 7, 1925.)

No. 133.

1. Patents ☞90(1)—Patents of earlier application, but making no conflicting claims, do not aid defense of prior invention.

Defense of prior invention, as distinguished from anticipation, cannot be aided by patents of earlier copending applications, making no claim directed to the subject-matter, conflicting with or included in the scope of the claims of the patent in suit.

2. Patents ☞328—No. 1,284,523, for accelerator attachment, held not anticipated, to involve invention, and infringed as to claims 1 and 2.

Williams patent, No. 1,284,523, for an accelerator attachment for automobile throttle valve controller, held not anticipated, to involve invention, and infringed as to claims 1 and 2.

3. Patents ☞49—Infringement lends force to claim of utility against infringer.

Infringement of patent lends great force to claim of utility, at least against infringer.

4. Patents ☞328—No. 1,139,685, claim 3, for automobile throttle valve controller, held not anticipated, valid, and infringed.

Judd patent, No. 1,139,685, claim 3, for a mechanism for controlling throttle valves of automobiles by hand or foot, held not anticipated, valid, and infringed.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the Williams Bros. Aircraft Corporation against the Gould-Mersereau Company for infringement of patent. Decree for defendant, and plaintiff appeals. Reversed.

Hervey S. Knight, of Chicago, Ill. (Walter Christie, of San Francisco, Cal., and D. Anthony Usina, of New York City, of counsel), for appellant.

William S. Pritchard, of New York City, for appellee.

Before ROGERS, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The appellant sues for infringement of claims 2 and 3 of patent to Judd, No. 1,139,685, for a controlling mechanism for throttle valves, which was granted May 18, 1915, on an application filed September 8, 1914; also for infringement of claims 1, 2, 3, and 4 of patent to Lloyd M. Williams, Percy J. Williams, and Chester L. Williams, No. 1,284,523, granted November 12, 1918, on application filed November 4, 1916, for an accelerator

*Certiorari granted 46 S. Ct. 350, 70 L. Ed. ——.

attachment. The defense of want of validity, principally because of the state of the prior art, is interposed. Infringement is denied.

The object of the invention is to provide a mechanism for controlling the throttle valves of motor-driven vehicles, which may be controlled either by hand or foot power. The advantages urged are cheapness, simplicity, and durability of construction, and it is clearly demonstrated that the contrivance made under the patent may be installed in a Ford car merely by removing the standard connecting rod and substituting this one. All that is required is to find a suitable place for the pedal and make the necessary installation. It does not require a high degree of mechanical skill to do this. In addition, there is an advantage in the factor of safety which inexperienced drivers may have in time of trouble, due to the mutually independent operation of both the hand and foot mechanism. A considerable business has been built up by the appellant in manufacturing under the patent in suit. It is extensively used on Ford cars.

The invariable practice of the prior art was to transmit motion from the pedal connecting rod through an instrumentality which holds the throttle rigid and immovable so long as the pedal is depressed, as through the medium of an arm or a thrust rod extending rigidly from the foot lever, or a jointed connection involving a lever fulcrumed at a fixed point upon the engine, and to provide a lost motion connection in the connecting rod. This rendered the manual control inoperative whenever the pedal control is in use. The principle of the invention in suit was making the connecting rod out of the primary and secondary member slide upon one another. A transmitting connection from the pedal to the connecting rod is carried at one end. It is so yielding in the direction of the connecting rod movement that motion may be imparted to the connecting rod bodily or as a whole by the manual control, even while the pedal is depressed. The pedal power is not transmitted by rigid connecting parts, but by the pedal's operation on the connecting rod or part of the connecting rod. The connecting rod is at all times operative and continuously a functioning element of control between the hand lever and the throttle. It is responsive to the pedal, because the pedal changes the length of the rod through which the hand lever is holding the throttle, while the hand lever is still dependent upon a holding means.

In claim 2 it is broadly stated: "A foot-

controlled device operative on said connection to contract the same, against the tension of said spring, and thereby actuate said throttle valve independently of said hand-controlled rod." In claim 3, a "foot-controlled device, operative on the primary section of said rod." In construction under this Judd patent in place of the rigid rod connection between the crank arms there is employed a longitudinally extensible and contractable rod, comprising a primary section and a secondary section; the former being telescoped into the latter. The outer end of the rod section is pivotally secured to the free end of the crank arm by a hooklike extension screwed into the rod section. Rigidly secured to the rod section is a laterally projecting lug, which slidably works in a longitudinally extended slot formed in the rod section, and affords a stop to limit the longitudinal separation of the rod sections. A coiled spring is telescoped onto the rod section, compressed between a collar thereon and the inner end of the rod section, and yieldingly holds said sections in their extended positions. The rod sections complete the connection between the hand piece and throttle valve. While contracted by the foot mechanism, this extendable or contractable connecting rod exists as a continuing operative and effective connection between the two crank arms and the throttle, and is the crux of the whole situation in the Judd patent, because the necessary result thereof is to cause the foot control to operate upon a changed length of the rod without disturbing it as such operative connection between the two cranks, thereby bringing about the independence of the action between the hand and foot controls, which enables either to operate without impairing the control which the other has over the throttle. And this is the identifying novelty of the invention.

The Williams patent is the same operative principle as the Judd patent; that is, it has a similar organization of elements, but there is a different structural detail. The means through which the Williams structure embodied the Judd principle of rendering the pedal operative upon the two-part connecting rod enables it to perform an operation on the rod and change its length, while leaving the rod a continuing operative element of control between the hand-adjusted crank and the carbureter crank, which consists of a device known prior to the invention, although never before used in this manner, as the Bowden wire. In its operative principle, a tube is produced by coiling a wire after the manner of a tightly wound spring; such a tube is freely flexible and may be diverted into any path, but it will always remain noncompressible lengthwise, so that, if another wire is introduced into the flexible tube, it may be pulled in the tube, even though partaking of the path of the tube, without the wire straightening out or securing the shortest distance between the two points, and therefore be serviceable as a means for transmitting motion. Williams used the Bowden wire between the operative upper end of the pedal and the sliding primary member of the connecting rod, with its remote end in floating support upon the connecting rod in the same sense that it rides with the connecting rod on the flexible tube, and is anchored to the rod member, and the wire passes on to the sliding rod member, in order to move the latter relatively to the part performing upon the connecting rod the operation of shortening the connecting rod without disturbing the continuity of the hand lever control.

The appellant's commercial structure uses this flexible wire tube. The coiled spring interposed between the two collars, as in the Judd patent, performs the function of holding the extendable and contracting connecting rod in its normally connecting position. When the throttle is depressed, the yielding of the spring permits the throttle to open independently of the rigid connecting rod, which latter is movable only as a hand mechanism. Thus the hand-actuated mechanism and the foot-actuated mechanism may open and close the throttle valve independent of each other.

[1] Of the patents referred to as prior art, Hess, No. 1,174,981, granted August 26, 1923, Bowmann, No. 1,132,907, granted July 28, 1923, and Gibson & Staples, No. 1,131,-831, granted March 16, 1915, were copending applications in the Patent Office with the Judd patent. They cannot aid in the defense of prior inventions as distinguished from anticipation. This court said in Davis, etc., v. Alexander Milburn Co., 1 F.(2d) 227:

"Priority of invention does not mean the same thing as anticipation in invention. The logical reason for sustaining priority of invention is to prevent double patenting, and double patenting is forbidden, not because that phrase can be found in any statute, but because two monopolies of the same entity are inherently repugnant to the essential nature of the patent system. * * * *"

The patents of earlier applications must

be considered for whatever they disclose. "This should, we hold, be limited to such matters as are included in their several claims, unaided by their specifications or by extrinsic evidence except where necessary to elucidate and make the same clear." Farmers' Handy Wagon Co. v. Beaver, 236 F. 731, 150 C. C. A. 63. In neither of these patents called to our attention is there any claim which is directed to the subject-matter in any way conflicting with or included in the scope with Judd's claims.

The most important of the other prior patents upon which reliance is placed by the appellee are the patents to Schmidt, Huff, Benjamin, and Spencer. We find no reason for considering the others.

The patent to Schmidt, No. 843,722, either passes the power from the pedal to the throttle crank directly by the rigid nonextensible rod, and uses the spring acting upon the lever as a lost motion device in the operation of the hand crank, or it passes from the pedal, through the rod, to a lever fulcrumed on a fixed point on the engine, and this in turn is connected by a rigid rod to the throttle lever, leaving the spring between the lever and the rod leading to the hand crank to serve as a lost motion device. There is no operation of the pedal upon the extensible connecting rod, and therefore there is no possibility of performing the operation of the Judd principle.

Huff, No. 1,029,685, operates upon the principle of transmitting the power from the pedal through a rigid rod to a lever having a fixed pivot, that connects up to the hand crank with the same rod through the medium of springs, producing another instance of pedal domination coupled with lost motion connection. It is distinguishable from the pedal operation on the hand crank connecting the rod, for the purpose of changing such connecting rod without retiring the hand crank from functioning.

In Benjamin, No. 1,067,097, the pedal transmits through a rigid rod to the slide, which in turn rocks the intermediate lever having a fulcrum on the rod, which is fixed by the governor, so that, if the motion ultimately reaches the throttle lever through the rigid, unyielding connections, that renders the pedal wholly dominant at all times. The hand crank is so related to the slide that springs act merely as lost motion devices. The foot pedal does not operate upon the hand crank action, but takes the connection entirely away from the influence of the hand crank.

In Spencer, No. 1,081,166, the power is transmitted from the pedal through a rigid thrust rod to a bell crank, fulcrumed upon a fixed pivot upon the engine, and so connecting the throttle lever through another rigid thrust rod as to render the pedal entirely dominant, and of necessity a lost motion connection. In this instance it is a flexible chain, through which the hand crank may act upon the rod only when the throttle is not in function.

The citations of the prior art cause the foot-control devices to operate upon either a rigid arm, an unyielding thrust rod, or an intermediate lever pivoted upon a fixed point outside of the rod, and which act upon the throttle, with the result that the pedal completely dominates the throttle whenever it is in function, and the principle of operation is in this respect different from that of the patent in suit.

[2] As a reference against the Williams patent, we are referred to the Autocar illustration of 1908. This shows a device for controlling a timer on a car using the Bowden wire. This illustration wholly lacks any disclosure of mounting such transmitting connection upon an extensible connecting rod. It refutes any such mounting by teaching, as a basic and indispensable element of its use, the anchorage of one of its telescoping members upon a fixed part of the car, and the use of means for holding it positively to every adjustment.

The British patent, No. 22,638, suggests the control of brakes and speed gears from two different positions, using the Bowden wire. It refers to disadvantages, and to overcome which the patent describes two telescoping members, which would not do for the purpose of the patent in suit. This because one of them is to be connected upon the fixed anchorage, while the other is connected with the brake or gear to be moved.

The contribution by Williams to the appellant's commercial device is an improvement. It is more than the work of a skilled mechanic. Nobody thought of transmitting power by the Bowden wire. Others, seeking a solution of the want, adopted other methods. The need had existed, and the art seems to have been satisfied with what Judd and Williams accomplished, as is evidenced by the commercial success of the appellant's device. [3] The appellee's device does not depart from the new principle of the appellant's commercial structure made under the patents, although it was changed in detail after the

charge of infringement. It involves the innovations we find in the appellant's device. The fact that it has been infringed by the appellee lends great force to the claim of its utility, at least as against the appellee. Gandy v. Main Belting Co., 143 U. S. 587, 12 S. Ct. 598, 36 L. Ed. 272; Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177.

[4] We are satisfied that claim 3 of the Judd patent is valid and infringed by what appellee builds and sells, and claims 1 and 2 of the Williams patent are also infringed.

Decree reversed.