## SEYMOUR v. FORD MOTOR CO.
### No. 5559.

Circuit Court of Appeals, Sixth Circuit.
Nov. 5, 1930.

Joseph H. Milans, of Washington, D. C. (William J. Belknap, Clarence B. Zewadski,

and Whittemore, Hulbert, Whittemore & Belknap, all of Detroit, Mich., on the brief), for appellant.

F. L. Chappell, of Kalamazoo, Mich. (Charles R. Halbert, of Detroit, Mich., I. Joseph Farley, of New York City, and Longley & Middleton, of Detroit, Mich., on the brief), for appellee.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

Appellant brought his action in the District Court for infringement of patent No. 1,277,652, for a gearing, issued September 3, 1918, to Seymour, upon division of a prior application filed September 9, 1913. The court below dismissed the bill of complaint "for want of equity," after rendering an opinion to the effect that the patent in suit involved only variation in degree from the prior art, that the disclosures had not advanced the art, and that the defendant's construction more closely approximated the prior art than that disclosed by the plaintiff. The opinion was rendered in response to defenses asserted by the appellee. The first ground for the dismissal of the plaintiff's bill we construe as a finding of want of invention or patentable novelty; the second suggests lack of utility; and the third savors of lack of infringement, although it is not expressly held that the claims have not been infringed, if they are to be held valid.

The patent relates to gear wheels, one of which is driven by the other, and which are adapted and used to be moved into, or withdrawn from, intermeshing relationship with each other. The purpose is to so construct the ends of the teeth of the gears that they may be shifted into interlocking relationship without tendency to chatter, without flat surfaces of the co-acting teeth coming into contact with each other, and so that only narrow edges of sliding contact are provided. The means for accomplishing this result, and for avoiding flat surface contacts of relatively substantial area, is to cut or bevel the flat end surfaces of the gear teeth, at different or variant angles. Claims 1 and 2 broadly define the invention, and are printed in the margin.[1]

It had long been known in the prior art that an intermeshing of such gears would be greatly facilitated by this bevel or chamfer of the ends of the teeth, so that the axial motion of the tooth may start before the teeth reach the circumferential point of final engagement, and so that a substantial portion of the tooth of the driven gear may oppose an equally substantial portion of the driving gear at the moment of initial contact. Common practice was, however, to have the angles of bevel equal, as is shown in the French patent to Lefer, January 2, 1902, No. 317,-502. In the United States patent to May, No. 309,236, December 16, 1884, the ends of the teeth are beveled upon both sides, so as to assist in meshing when the driving gear is rotating in either direction, thus making the ends relatively pointed, or curving to a point. Another form is shown in United States patent to Chard, No. 744,678, November 17, 1903, in which the teeth are beveled upon both sides on straight lines; the co-acting teeth of the two gears being beveled at the same angles. In order to prevent the breaking of sharp points at the contacting ends of opposite teeth, it had also been customary to leave a land or flat unbeveled portion of the tooth, and thus secure the advantages of beveling while avoiding frequency of damage to the teeth.

Seymour believed that with the teeth of the intermeshing gears cut at the same angle there was the danger of flat surface contacts with the jar and noise incident thereto, and that this might be avoided by cutting or beveling the teeth of the driving and the driven gears at different angles, thus producing a theoretical line or point contact, and avoiding the jar, noise, and friction incident to surface contacts (friction is of very minor significance, for even greater friction is developed after the teeth have passed the bevel but are still sliding into complete engagement). This he describes as beveling at variant angles. The situation is best understood by the diagram printed herewith, which shows the cross-section of the teeth, in a plane perpendicular to the radius of the gear wheel, as the teeth start upon the intermeshing operation. The first of these shows the bevel disclosed by Lefer; the second the device of May; the third shows the prior art teeth beveled at identical angles and with lands at the ends for greater durability; the fourth shows the Seymour design; and the

---

[1] 1. In gearing, the combination of driving and driven gears, each of said gears having teeth the ends of which are cut at variant angles to avoid flat surfaces of contact on entering into mesh.

2. In gearing, the combination of driving and driven gears, each of said gears having teeth with beveled ends, the bevels on the adjacent ends of laterally aligned co-acting teeth being cut at differing angles whereby only narrow edges of sliding contact are provided between the surfaces of co-acting teeth and flat surfaces of contact on said teeth are avoided.

fifth the alleged infringing device. It will be noted that the latter has the teeth beveled at variant angles, but uses, upon both sets, the lands of the prior art. This offers an opportunity for flat surface contact, but only for so small a section that the attending disadvantages are more than offset by the use of beveled teeth and by the greater durability thus secured.

terially advanced the art by the disclosure of beveling the ends of the teeth at variant angles. Considered apart from the question of the exercise of invention, this is essentially the defense of want of utility—the lack of any useful function—and in this aspect it is correctly claimed by the appellant that an infringer is estopped to assert the defense. The patent is itself evidence of such utility,

The question of infringement first challenges attention. The claim of noninfringement can be supported only upon the ground that Seymour's patent drawings show beveled teeth without lands, while the defendant makes use of this expedient then old in the art. Neither of the claims in suit requires that the bevel shall extend across the entire end surface, and the greater strength and durability produced by the lands is a matter entirely distinct from the purpose or function of the bevel. Whether or not lands shall be used seems a matter of pure choice and within the realm of engineering and mechanical selection. If the use of divergent or variant angles of bevel is patentable, the advantages of such invention may not be appropriated and infringement be avoided by the addition of a feature having a wholly independent function.

We turn, then, to a consideration of the contention that Seymour has not in fact ma-

and the use of the patented device by the defendant has long been recognized as an admission of this fact, and as creating an estoppel upon the defendant to deny such utility. Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939; Gandy v. Main Belting Co., 143 U. S. 587, 595, 12 S. Ct. 598, 36 L. Ed. 272; DuBois v. Kirk, 158 U. S. 58, 63, 64, 15 S. Ct. 729, 39 L. Ed. 895; Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co., 225 U. S. 604, 616, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653; F. D. Cummer & Son Co. v. Atlas Dryer Co., 193 F. 993, 997 (C. C. A. 6); Boyce v. Stewart-Warner Speedometer Corp., 220 F. 118 (C. C. A. 2); Dunham v. Kelley-Koett Mfg. Co., 246 F. 845, 848 (C. C. A. 6); Sandy MacGregor Co. v. Vaco Grip Co., 2 F. (2d) 655 (C. C. A. 6).

Congress has defined the meaning of the term "invention" as including "any new and useful art, machine, manufacture, or com-

position of matter, or any new and useful improvements thereof. \* \* \* \*" 35 U. S. Code § 31 (35 USCA § 31). The inventive act consists of the conception of the idea and of its reduction to practice, and there must be both novelty and utility; and yet it is firmly established that there must also be an impalpable "something more." Utility, in the sense in which we have already discussed it, that is, "sufficient practical utility to make a device 'useful,' in the sense of the patent statute" (Sandy MacGregor Co. v. Vaco Grip Co., supra at page 656), is closely akin to operability, and may exist in the claimed machine or manufacture, even though invention were not exercised in devising it. So, also, the subject of a patent may possess novelty, in the sense that the particular device had never before been made, without an exercise of the inventive faculty appearing. Perhaps one element of this additional requisite may be said to be a substantial advance or step forward in the particular art. The reward of monopoly is for the invention or improvement, and not to the man. This is inherent in the very essence and purpose of the statute. Thus one does not exercise the faculty of invention, nor entitle himself to the reward of monopoly, unless he is instrumental in producing this forward step, and, as was also said in the Sandy MacGregor Case, supra, "of course, the infringer is not estopped to deny patentable utility in this sense, because if he were he could never dispute patentability."

In many cases the presence of invention is made instantly manifest to the mind of the court from the patent itself, in view of the prior art; or it may be shown by commercial success, by the fact that the device satisfies a long-felt want, or by broad acceptance and use. Frequently the line is drawn between that which would naturally and spontaneously occur to any skilled mechanic, and that which, in spite of the need, had for years defied discovery and practical application and was therefore not to be considered obvious. But, whatever the criteria used, we are of the opinion that the court below was right in holding that that which is of truly trivial effect in the art, solves no real problem, and answers no recognized need, cannot be said to rise to the dignity of invention. It lies, rather, within the domain of the right of selection open to all.

All this, we think, is clearly expressed or inferred from the often-quoted passage from the opinion in Atlantic Works v. Brady, 107 U. S. 192, 200, 2 S. Ct. 225, 231, 27 L. Ed. 438: "The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention." We must find more in the patent than that it has utility in the sense discussed, especially where that utility is established only by the inference arising from the grant of the patent, and by the estoppel raised by law.

The question we are here considering is also distinct, in a sense, from the question of novelty. We are cited to no patent, domestic or foreign, which anticipates the variant angles of Seymour, but the record indicates rather that this is due to an absence of defect in the old devices—to the want of any problem to be solved in order to attain the forward step—than to inability on the part of those skilled in the art to suggest a remedy for a recognized evil. If the existence of a need for the avoidance of flat surface contacts of the beveled portions of the teeth be conceded, and that this was known to the art, we already find one solution in the line contact produced by the teeth of May with their convex, curved surfaces, and another in the use of gears, but one of which has its teeth beveled. To accomplish the result of such line contacts, assuming the need, we see nothing more than mechanical ability and judicious selection, in the variant angles of Seymour. Such bare novelty as here exists tends to negative invention and the forward step rather than to strengthen the argument of their existence.

Upon the present record, it seems to us apparent that no substantial advance in the art was made by the substitution of the variant angles of Seymour for the equal angles of the prior art. So far as the disclosures of the patent are concerned, one of the gears is in motion during the intermeshing operation, so that surface contacts are at best infrequent, momentary, and glancing blows, which occasion no appreciable defects of operation. The step forward, if any, was insignificant and trivial in the art, and without commercial acceptance or use, except as defendant's device overstepped the line. Under these cir-

cumstances, the existence of invention should not be inferred from novelty and utility, considering novelty in the sense of want of patent anticipation, or even prior want of designed use in the art, and utility as that founded only on inference and estoppel. The change is rather of that trivial and commonplace character which bespeaks an absence of the faculty of invention, as in Naceskid Service Chain Co. v. Perdue, 1 F.(2d) 924 (C. C. A. 6); and the lack of prior uses or patent anticipation is due, we think, to the absence of a real need or problem to be solved. Compare, also, Tolfree v. Wetzler, 22 F.(2d) 214 (D. C. N. J.); Carson Inv. Co. v. Anaconda Copper Mining Co., 17 F.(2d) 815, 824 (D. C. Mont.). The mere chance or circumstance of infringement is not, under the showing made, a negation of these views, but an illustration of that power of choice and selection which was open to the defendant.

While it was held by the District Court that the change made by Seymour was but one of degree, possibly referring to the action of gears of which the teeth of only one were beveled, thus producing a "variant angle" in the adjacent tooth sides, it is even more apparent that the change producing the point or line contact was at best one of form only (in view of May), productive of no substantially beneficial results, and not improving operation to any practical degree. No patentable difference is observable between the large radius curve of May and the straight line of Seymour. It follows that the decree of the court below dismissing the bill must be affirmed.