HUNT INDUSTRIES, INC., Plaintiff,

v.

FIBRA BOATS, INC., Defendant.

No. 67–901–Civ.

United States District Court
S. D. Florida.
May 16, 1969.

William R. Alvin, Miami, Fla., for plaintiff.

John Cyril Malloy, Miami, Fla., for defendant.

CABOT, District Judge.

Trial of this action was had before the court sitting without a jury on December 17, 18, and 19, 1968, between the plaintiff, Hunt Industries, Inc., a Massachusetts corporation, assignee of United States Letters Patent Number 3,085,535, embracing a particular design of small boat high speed planing hull, and the defendant, Fibra Boats, Inc., a Florida corporation, manufacturer of a competing small boat hull.

The issues tried are only two:

(1) Whether Claim 4 of United States Letters Patent Number 3,085,535 is valid.

(2) If Claim 4 of the patent is valid, whether defendant's boat hull infringes said claim.

By stipulation of counsel all other issues raised by the pleadings (the complaint and answer; the counterclaim and reply) were severed to be later tried, if necessary. These other issues are: (1) damages due plaintiff by defendant; (2) anti-trust violations by plaintiff; (3) interference by plaintiff with advantageous business relationships of defendant.

The court has considered the pleadings, the evidence, and the advices of counsel, both written and oral, is otherwise duly advised in the premises, and makes the following:

## FINDINGS OF FACT

In late 1956, Charles R. Hunt, a widely known naval architect, conceived a particular design of small boat high speed planing hull featuring a constant steep angle of deadrise in the lower hull portion (from keel to chine) with a straight run from amidships aft to the transom forming a "V" bottom of two flat planes, with a substantial length to beam ratio (roughly three to one) and the chine above the normal displacement waterline of the hull.[1,2]

In developing the hull, the inventor, in the Spring of 1957, launched a 23 foot wooden prototype with a centerboard and driven by a single inboard engine mounted amidships, and in the Spring of 1958, a 16 foot wooden prototype powered by an outboard motor and incorporating a water ballast tunnel. In July and September, 1958, two 23 foot fiberglass prototypes with centerboards and inboard engines mounted amidships were built.

A continuous program of experimenting and testing of the prototypes was carried on by the inventor through the Spring and Summer of 1959, with the fiberglass hulls being used as tenders during the American's Cup Races which were held over a period of several months into October of 1958.

On August 24, 1959, Charles R. Hunt filed a patent application disclosing the hull described in the foregoing and also disclosing in all claims a water ballast tunnel for stability of the boat while in operation at low speeds and while at rest.

During the prosecution of the patent, a period of almost four years, amended claims were filed eliminating the water ballast tunnel. These ultimately became Claim 4, the claim here controverted. The patent, Number 3,085,535, was issued on April 16, 1963, to the plaintiff, Hunt Industries, Inc., as assignee of Charles R. Hunt.

■ The basic statutory provisions under which this controversy arose are found in Title 35 of the United States Code. Sections 101–103 specify the requirements of patentability that must appear in subject matter capable of being patented. They are: novelty; usefulness; and non-obviousness; and concurrence of all three is necessary for patentability. Graham v. John Deere Co., 1966, 383 U.S. 1, 86 S.Ct. 684, 15 L. Ed.2d 545; Zero Mfg. Co., Inc., v. Miss. Milk Prod. Ass'n., 5 Cir. 1966, 358 F.2d 853. A patent is not novel, and therefore not patentable, if it has been disclosed by being "patented or described in a printed publication in this or a foreign country, or in public use, or on sale in this country, more than one year prior to the date of the application for patent. * * *" 35 U.S.C. § 102(b). It is obvious and therefore not patentable, though not identically disclosed under § 102(b) "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art. * * *" § 103.

■ A patent is presumed to be valid and the burden of establishing invalidity rests on the party asserting it. 35 U.S.C. § 282. Since the defendant here contends that subject patent is invalid, the defendant carries the burden of submitting proof of invalidity and that burden is greater than the preponderance of the evidence rule, which applies to civil cases generally. The proof

---

1. "Deadrise angle" means the angle which the bottom section makes to the horizontal; "chine" means the juncture of the bottom with the top sides; "keel" means the juncture of the two bottom planes; and "transom" means the top side across the stern.

2. The ideal shape for efficiency and therefore speed in planing is a flat surface, as typified in slight variation by the hydroplanes which hold world water speed records. But deadrise must be introduced for seakindliness; that is, to reduce pounding and for ease of handling.

of invalidity must be clear and convincing, with all reasonable doubts resolved in favor of validity. Patterson-Ballagh Corp., et al. v. Moss, et al., 9 Cir. 1953, 201 F.2d 403; Warner & Swasey Company, et al. v. Universal Marion Corp., D.C.Col.1963, 237 F.Supp. 719. And when unpatented devices, orally testified to, are relied upon to defeat the patent, the proof must be "clear, satisfactory, and beyond a reasonable doubt." The Barbed Wire Patent, 1892, 143 U.S. 275, 284, 12 S.Ct. 443, 447, 36 L.Ed. 154.

The defendant alleges that Claim 4 of plaintiff's patent is invalid on the theories of (1) obviousness, (2) prior use and sale, and (3) delayed claiming.

## OBVIOUSNESS

■ In determining the obviousness or non-obviousness of the subject matter, three steps are involved: first, a determination of what the prior art was; second, identification of the subject patent and what, if any, improvement the patentee has made over the prior art; and third, whether the improvement would have been obvious to one skilled in the art. Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., 6 Cir. 1964, 332 F.2d 406, 411; Swofford, et al. v. B & W, Inc., 5 Cir. 1968, 395 F.2d 362; Graham v. John Deere Co., supra. And the test of obviousness is not hindsight but must be analyzed from the standpoint of the state of the art at the time of the development of the invention. Blumcraft of Pittsburgh v. Citizens and Southern National Bank of South Carolina, D.C.S. C.1968, 286 F.Supp. 448; Preformed Line Products Co. v. Fanner Mfg. Co., 328 F.2d 265, 271, 6 Cir. 1964, cert. denied, 379 U.S. 846, 85 S.Ct. 56, 12 L.Ed. 2d 51.

■ In examining the prior art, any pertinent references not considered by the patent office as disclosed by the file wrapper will serve to weaken the presumption of validity, but of course, any overlooked references must be pertinent, for as stated in Otto v. Koppers Co., Inc., 4 Cir. 1957, 246 F.2d 789, 801, "Astute and enterprising attorneys can always find references not of record in the Patent Office, but if they do not involve some substantial element in the defense of anticipation which was not considered by the Patent Office, the failure to make them record references cannot weaken the statutory presumption."

■ The defendant submitted no prior patents of boat hulls not cited by the patent office, so it is presumed none were found and, of course, the presumption of validity which arises from issuance of the patent also applies to the distinctions found by the patent office in the patents cited by them as having been considered.

The defendant did submit five patents of seaplane floats or pontoons as evidence of prior art, but the court finds them not pertinent for a variety of reasons, but primarily because their function is entirely different from that of a high speed planing boat hull; the pontoons merely soften the impact of the plane in landing or floating on the water, stability is provided by two pontoons or outriggers, and the plane depends on its wings for lift rather than the planing of the pontoons.

A number of publications were offered by defendant as showing that the Hunt hull was described in printed publications more than one year prior to filing date in an effort to defeat the novelty requirement. But none of these show steep deadrise angle at the transom approaching that of subject invention, nor the constant flat cross-sections extending more than half the length of the lower hull portion, nor the substantial ratio of length to beam, nor the high chine in relation to normal displacement waterline, all characteristics of the Hunt hull, nor are any shown to have produced the superior seakeeping qualities of the patented hull; the "soft" ride, stability, and ease of handling, especially in rough water.

And even if defendant's references were pertinent, the presumption of validity, though weakened, still exists. Warner & Swasey Company, et al. v. Universal Marion Corp., *supra*.

On the other hand, the favorable articles and publications concerning the success of the Hunt hull, which were introduced in evidence on behalf of plaintiff, buttress plaintiff's claim of non-obviousness. Indeed, defendant's expert, James Wynne, was most enthusiastic in his praise of the hull, as shown by his trial testimony as well as quotations earlier appearing in several publications, including Popular Boating (Plaintiff's Exhibit 18), where he was quoted as saying, "Fantastic is a much overworked word, yet it is the only one which I think describes the performance of the Hunter."

See *Council of America, Inc. v. Ceramic Tilers Supply, Inc.*, D.C.C.D. Calif.1968, 159 U.S.P.Q. 204, where it is said, "Favorable mention of developments of patents in suit in trade publications and by competitors is indicative of non-obviousness."

A secondary consideration on the issue of obviousness is the commercial success attributive to the patent. *Graham v. John Deere Co.*, supra; *National Filters, Inc. v. Research Products Corp.*, 5 Cir. 1967, 384 F.2d 516. The Hunt deep vee hull is shown to have been widely copied throughout the world and has enjoyed substantial commercial success, in excess of $175,000.00 in royalties having been collected on the patent. One noteworthy and highly publicized indication of its success is that a boat of the deep vee design has been the winner of every Miami to Nassau Ocean Race since 1960, and for the first five years thereafter the Hunt licensee, Bertram, took first place. (Defendant's Exhibit 18, Answer to Interrogatory No. 30).

The Hunt hull as described in Claim 4 of the patent was not anticipated by any of the prior art patents or publications received in evidence. It was not obvious to those skilled in the art at the time of the invention. On the contrary, his invention represented an important and patentable contribution to the boat building art.

The Hunt hull was new and novel in form and produced new and useful results by superior performance as heretofore described.

## PRIOR USE AND SALE

Defendant contends that the patented hull was in public use and on sale more than one year prior to August 24, 1959, the date of the filing of the patent application, and thus the patent is invalid under § 102(b) of the statute.

The evidence shows that in April, 1958, George D. O'Day Associates, Inc., announced to the public a new hull design as disclosed in Claim 4 of the subject patent and offered to supply boats in the future not yet built; however, there was no showing that the completed hull was in the hands of O'Day at the time of the public sale offer. "An offer to sell is a bid for customers but is not a sale." *Trabon Engineering Corp. v. Dirkes*, 6 Cir. 1943, 136 F.2d 24. This offer was under an agreement between O'Day and Charles R. Hunt, which had been entered into about March 31, 1958, though the details of the agreement are not shown. The two wood and two fiberglass prototypes as earlier described were shown to be experimental models and were actually used in an experiment program well beyond the critical August 24, 1958, date.

Thereafter a third fiberglass hull was molded and the first sale by O'Day was made on December 29, 1958. At the time O'Day offered the hull to the public for sale only the wood prototypes had been built. Therefore, this activity fails to show commercial manufacture of the Hunt hull in its completed form prior to August 24, 1958.

The Aqua Hunter advertisement, portraying the patented hull, which appeared in Popular Boating (Plaintiff's Exhibit 18), recites that it was made in Canada for O'Day Asso-

ciates. It was not shown whether the O'Day offer of sale was *in this country* or in Canada, and the same lack of proof occurs with reference to O'Day's first sale on December 29, 1958. This deficiency is fatal to the use and on sale requirements of Title 35 U.S.C. § 102(b).

Gandy v. Main Belting Co., 1892, 143 U.S. 587, 12 S.Ct. 598, 36 L.Ed. 272. "Public use or sale was limited to a use or sale in this country."

The continuous testing and experimenting conducted by the inventor was made necessary because of the revolutionary nature of the hull and the application of the design to boats of varying sizes and types. After August 24, 1958, three major problems had not been solved; (1) the wetness of the boat interior under way, (2) the difficulty of steering control of the 23 foot single engine outboard at low speed, and (3) inability to use the 16 foot outboard model for water skiing, etc., owing to the weight of the water in the tunnel. As stated in Watson v. Allen, 1958, 103 U. S.App.D.C. 5, 254 F.2d 342, 346:

> * * * the law also recognizes that the inventor may wish to perfect his idea before applying for patent, and indeed, it is in the public interest that he do so. Hence, facts which may well be fatal to patentability *after* experimentation are frequently excused if they occurred *during* experimentation.

■ The date of invention is fixed when the inventor's ideas are reduced to practice. Consolidated Vultee Aircraft Corp. v. Maurice A. Garbell, Inc., 9 Cir. 1953, 204 F.2d 946, cert. denied 346 U.S. 873, 74 S.Ct. 122, 98 L.Ed. 381. To establish a reduction to practice of the inventor's idea, there must be a demonstration that the inventor's idea works; that the invention will perform in a manner which will accomplish its intended purpose. RCA v. International Standard Elec. Corp., 3 Cir. 1956, 232 F.2d 726. And there may be an experimental use even following reduction to practice where the experiments are part

of an attempt to further refine the device. Atlas v. Eastern Air Lines, Inc., 1 Cir. 1962, 311 F.2d 156.

■ Defendant failed to prove by clear and convincing evidence that the Hunt hull had been on sale in the United States more than one year prior to the filing of the application for patent. Any public use of the hull more than one year prior to filing of the application for patent was solely for experimental purposes.

### DELAYED CLAIMING

Defendant contends that the hull described in Claim 4 of the patent was not disclosed by the original application for patent but represents the introduction by amendment of new matter into the disclosure of the invention as prohibited by Title 35 U.S.C. § 132. This contention is apparently based in the main on the fact that the amendments which later became Claim 4, and were introduced about two years after the original application, did not include the water ballast tunnel.

This theory of delayed claiming is enunciated in the case of Muncie Gear Works, Inc. v. Outboard Marine & Mfg. Co., 1942, 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171. That case holds that the original application wholly failed to disclose the invention which the amended claims disclosed and that consequently the amendment should be treated as a new application. Thus the statutory period of prior public use, which bars patentability, should be determined from the date of the filing of such amendment rather than from that of the original application.

■ However, it is clear that claims can be added or amended and still retain the benefit of the one year period of prior public use dating from the original application, as long as the original application adequately discloses the invention finally claimed. Diamond International Corp. v. Walterhoefer & Sons, D.C.Md. 1968, 289 F.Supp. 550. Or as held in Il-

linois Tool Works, Inc. v. Continental Can Co., Inc., 7 Cir. 1968, 397 F.2d 517, in distinguishing the *Muncie Gear* case, the later claim, while not claimed originally was "readily apparent" in the original application.

Helpful in considering this matter is the following from Technicon Instruments Corp. v. Coleman Instruments, Inc., D.C., 255 F.Supp. 630:

> By disclosing in a patent application a device that inherently performs a function, operates according to a theory, or has an advantage, a patent applicant necessarily discloses that function, theory, or advantage even though he says nothing concerning it. The application may later be amended to recite the function, theory, or advantage without introducing prohibited new matter. In any event, the fact that the Patent Office allows such an amendment without objection thereto as new matter (within the meaning of Title 35, U.S.C. § 132) is entitled to an especially weighty presumption of correctness.

It is apparent that elimination of the water ballast tunnel only narrows the scope of the original disclosure and did not introduce a new subject matter into the application. The variation of the hull without the tunnel was obvious and inherent in the original application. Consider the following from the opening paragraphs of the file wrapper history (Defendant's Exhibit 9):

> This invention relates to boat construction and more particularly to a novel, high speed planing hull especially useful as an outboard motor driven hull for rough water operation.

> The main object of the invention is to provide a boat hull which has inherent stability enabling it to be operated as a planing hull in rough water conditions, even with large variations in boat load. At the same time, the invention provides a hull which may be automatically ballasted for low speed operation, yet remain a light weight hull in high speed operation, as is essential in a planing hull, as well as one of simple and economical construction.

Defendant failed in its heavy burden of proof to produce evidence sufficient to warrant setting aside the "especially weighty presumption of correctness" in the Patent Office's allowance of the amended Claim 4.

## INFRINGEMENT

Defendant's hull is powered by a "stern drive" or "inboard-outboard" engine, which came into use after the invention of the Hunt hull. This type engine weighs approximately three times more than an outboard. Being installed inside the boat near the waterline and at the stern, it causes radically different loading characteristics from either (1) an outboard engine, which, in addition to being much lighter, is mounted on the gunwale, or (2) a conventional inboard engine mounted amidships. Thus, the deeper riding characteristic of the Fibra hull is controlled by the weight and position of the engine and other loading of the hull.

The slight variation in the straight run of the "V" bottom of the Fibra hull at the transom, if any, is minimal and insignificant.

Each element of Claim 4 of the Hunt patented hull would read squarely on defendant's hull if the accused hull were powered by an outboard engine or an inboard engine mounted amidships. In fact the evidence shows that the Hunt hull reads squarely on the accused hull even with its inboard-outboard engine when trimmed to ride level at rest. The mode of operation of the accused hull and the results obtained are the same as in the patented hull.

Infringement of a patent exists where the accused device and the disclosure of the patent in suit are substantially identical in mode of operation and results accomplished; that is, it pro-

duces substantially the same effect in substantially the same way as that taught in the patent. Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 1950, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097; Merrill v. Builders Ornamental Iron Co., 10 Cir. 1952, 197 F.2d 16.

## CONCLUSIONS OF LAW

### I.

The Court has jurisdiction of the parties and the subject matter of this cause.

### II.

The plaintiff is the owner of United States Letters Patent Number 3,085,535 and all rights of recovery thereunder.

### III.

 Claim 4 of United States Letters Patent Number 3,085,535 is novel, useful, and non-obvious, and therefore is valid.

### IV.

The boat hull of the defendant infringes Claim 4 of United States Letters Patent Number 3,085,535.

### V.

A final judgment on the issues of validity and infringement should be entered in favor of the plaintiff, Hunt Industries, Inc., a Massachusetts corporation, and against the defendant, Fibra Boats, Inc., a Florida corporation, enjoining the defendant, its officers, servants, agents, and those in privity with it from any further infringement of Claim 4 of the patent in suit.

### VI.

This cause should be set down for further trial on the severed issues of damages and defendant's additional defenses.