AMREIN FREUDENBERG CO., Inc., v.
GARFIELD et al.

District Court, S. D. New York.
Feb. 15, 1934.

Fritz Ziegler, Jr., of New York City, for plaintiff.

Glass & Lynch, of New York City (Leslie Kirsch and Sydney W. Cable, both of New York City, of counsel), for defendants.

WOOLSEY, District Judge.

My judgment in this case is that the plaintiff should have a decree. I will deal with the details thereof later in my opinion.

I. Perhaps I should first dispose of the question of infringement.

It is argued by the counsel for the defendants that the patent does not properly cover or disclose any design for an appliqué, which is what was made by the plaintiff as shown by Plaintiff's Exhibit 10, and copied by the defendant as shown by Defendants' Exhibit A.

The point made by the defendants' coun-

sel is that the appliqué is not purely a silhouette as is embroidery, but that the raised effect of appliqué puts it into the class of substances involving three dimensions.

I think that this was somewhat of an exaggeration. It seems to me that in appliqué we have the silhouette enriched. That is the essence of the appearance of the plaintiff's exhibit.

I find that exhibit cannot be considered, properly speaking, as three-dimensional.

II. If, however, it should be considered that appliqué is three-dimensional, then I think that the case of King Features Syndicate v. Fleischer, 299 F. 533 (C. C. A. 2), would make it appropriate for me to say that a two-dimensional design patent could be infringed by a three-dimensional design copying the patented design.

I am quite aware that the King Features Syndicate v. Fleischer, commonly called the "Spark Plug" Case, was a copyright case; so was the case of Fleischer v. Freundlich (D. C.) 5 F. Supp. 808, which involved the animated cartoon known as "Betty Boop" and an infringing doll, and in which I followed the "Spark Plug" Case.

It seems to me that a design patent and a copyright, so far as the question of infringement is concerned, do not stand on different grounds, and I say, therefore, without any feeling of hesitation, that the "Spark Plug" Case is a proper authority for me to cite in saying that, if the appliqué is regarded as three-dimensional, nevertheless such appliqué made by another would be an infringement of the plaintiff's patent, and also that the plaintiff had a right to make appliqué under that patent and to protect such appliqué. In this aspect this cause is quite similar to the case of the "Betty Boop" doll to which I have just referred, for there one of the plaintiffs had a license from the copyright owner to make three-dimensional dolls representing the two-dimensional animated cartoons which were the copyrighted subject matter in the "Betty Boop" Case. I held the plaintiff doll was protected by the copyright as a three-dimensional embodiment of the copyrighted subject-matter.

III. I now turn to the question of whether the plaintiff's design was properly patentable. As there has not been any anticipation shown—as I take it an anticipation in a design patent case would have to be the same design—the question of patentability turns on whether the design of the plaintiff was a

sufficient advance over the designs shown in the prior art or involved sufficient departure from them to be regarded as the result of what I may call inventiveness in design.

I have thought about this question a great deal during the trial and the period of its interruption.

■ I have endeavored to arrive at the philosophy of the matter, and I find myself continually coming back to considerations which seemed important to me from the first, namely, (1) that, as design patents necessarily are very limited in their equivalents and do not occupy a great zone in an art, you have to deal with them somewhat leniently; and (2) that a design patent, as has been stated in some of the cases, necessarily relates—specially a design of this character—to comparatively trivial subject-matter.

Of course, we all know the old saying that "One swallow does not make a summer"; so you could say in a case of this kind that one daisy, if we call the flower here shown a daisy, does not make a design. It is the way in which the daisies making up this design are placed with regard to each other, with one flower above the other, with a slight apparent tendency to interlock the petals, with petals of different length which are not kept in the same relative position to the perpendicular, but in which the flower has been swung or turned so that some of the shorter petals in the lower flower point in a direction different from what they do in the upper flower.

I am frank to say that from the very beginning the design has appealed to me a great deal. It seems to me that, owing probably to the slight changes in the positioning of the flowers which I have just mentioned, there is an impression of movement to the whole design which makes it seem almost as if the flowers were revolving, or at least as if they were alive. It is difficult to explain these things, but that is the impression this design makes on me. I think it is fair to say, although the question is really a narrow one, that it was a sufficiently ingenious design to be entitled to a patent over the exhibits of the prior art which have been shown to me with such diligence by the defendants' counsel.

I therefore hold that this is not a mere aggregation of old elements of design, but that it is a new design, and the patent is not invalid for want of novelty and patentability over the prior art.

■ IV. I now turn to the question of the penalty of $250 which was the subject-matter, in part, of the evidence in the first part of the trial, and of some of the evidence which was taken yesterday afternoon.

The defendants here confessedly ordered the appliqué, via the United States Lace Corporation which they controlled, from Mr. Strobel. In the story which he told, Mr. Strobel gave me the impression that he was telling in essentials the truth about this matter.

I understand that it is contended that there was not any intentional infringement of the patent, and that after notice by the attorney for the plaintiff on February 23, 1932, of the fact that the design was patented, that the yardage which had been bought from Strobel by the defendants, amounting in all to 260 yards, was most of it secured back by the defendants from the persons to whom they had sold it.

If we had here a case which involved a question of unfair competition, I should, on Mr. Strobel's evidence, which I believed in preference to that of the defendants' witnesses, Mr. Bond and Mr. Menzer, find that the defendants got Strobel to manufacture this appliqué for them, having copied it from the plaintiff's patented design. I think that is what happened here.

But, in so far as its effect in a patent case is concerned, I do not think it followed necessarily that, however unfair their act was commercially, it has been shown that they actually knew of the patent at the time when they made their arrangement with Strobel. Consequently, inasmuch as they did what they could after actual notice of the patent was served on February 23, 1932, to call all the yardage of the pattern which they had sold, and did not make any sales afterwards, I think that the manufacture of their order by Strobel cannot be considered as coming within any zone of actual notice of the patent. Therefore I will not give the penalty of $250 which the plaintiff seeks.

V. Consequently, the interlocutory decree should contain a provision for a permanent injunction and for the appointment of a master to take an accounting of the profits which may have been made by the defendants and the damages which may have been suffered by the plaintiff by reason of small sales here.

In providing for the appointment of a master, there ought to be a provision in the interlocutory decree that, if the parties can otherwise agree, a master should not be ap-

pointed, because the indications here are, although I do not feel I have sufficient facts before me to enable me to pass definitely on figures of damages or on the accounting, that certainly the profits were negligible, and, in view of the small amount which the defendants had manufactured through Strobel and sold afterwards, I should think that it is unlikely that the damages could be heavy. It would be unfortunate, therefore, to load a comparatively small case of this kind in which the plaintiff has made its point with a large amount of costs for the fees and stenographic expenses of a master.

The plaintiff may, of course, have its costs.

VI. This opinion may stand as the findings of fact and the conclusions of law in this case.

VII. The interlocutory decree may be presented to me for settlement on the usual notice, and I will also, as I know about this case, retain jurisdiction of it until the final decree is entered, and, if there are some small points which the parties feel might be ironed out without going to a master, I will allow them to call on me, at any time convenient to me, upon two days' notice by either party to the other. I think in that way the case can be disposed of with the least possible friction.