## WHITE et al. v. LOMBARDY DRESSES, Inc.

District Court, S. D. New York.

July 8, 1941.

See, also, 35 F.Supp. 462.

Charles Sonnenreich, of New York City, for plaintiffs.

Mendes, Krisel & Lessall, of New York City (Herman Mendes and W. Lee Helms, both of New York City, of counsel), for defendant.

INCH, District Judge.

These actions all relate to dress patents. In case 8–41, Letters Patent No. 117,527. In case 10–138, Letters Patents Nos. 121,-448, 121,542, and 121,660. In case 10–413, Letters Patent No. 121,554. In case 10–486, Letters Patent No. 121,984. They were all tried together. The issue in each action is whether or not plaintiff was the owner of a valid design patent and if so whether that patent had been infringed by· defendant.

By arrangement with counsel single briefs have been submitted covering all these actions. Only one opinion is necessary, although separate findings will be required in each suit as well as decrees.

Both the plaintiff and the defendant manufacture ladies dresses. The plaintiff has its factory in Chicago. The defendant has its factory in New York City. In the market place the plaintiff is known to specialize, and has done so with exceptional success, in a distinct type of dress known as the "junior type", that is, one particularly adapted to young girls in school, college and business.

The inventor, on whom plaintiff depends in all these suits, is Syd Novak, and there is no doubt but that his ability and independence of so-called "trends" has been of exceptional value to the business of plaintiff. When Novak started with plaintiff their gross sales were $90,000 a year. Last year plaintiff's sales grossed $1,250,000. Consequently, in spite of the earnest argument of counsel for plaintiff that imitators, such as defendant, will ruin the business unless checked by a court, such result seems highly improbable, as this sort of competition now complained of has been going on during these past years, and, in fact, is apparently common in the trade.

Novak, of course, did not act alone in designing the attractive dresses in evidence. Plaintiff maintained, according to the testimony, a large number of assistants, such as cutters, pressers, finishers and operators, and a designing staff, which last year cost, including certain materials and other things used under the direction of Novak, approximately $50,000.

We can find therefore, with assurance from the testimony, that through the efforts of Novak, plaintiff has for several years been very successful in originating and putting on its "line" for exhibition to buyers, as each different season approached, a number of attractive dresses of the "junior type", a few of which in each "line" were exceptionally attractive to critical buyers who knew their trade and which resulted in large orders.

I think also that a fair view of the testimony shows that this exhibition of a "line" for a particular season, with the success of some of these dresses as shown, has been the happy hunting ground of defendant.

The testimony shows that it has been defendant's policy to attend such exhibitions and get similar information by purchase or otherwise in regard to plaintiff's new "line" and then have these dresses shipped to its own plant in New York and there actually copied in inferior materials and then sell same at a cheaper price. Plaintiff's wholesale prices range from approximately $9 to $15, while defendant's wholesale price averaged about $5.

Because of this copying re-orders of plaintiff's dresses in certain instances have been lost or cancelled.

While these actions are based on patents only, there is no charge nor indication that defendant ever attempted to mislead the public as to the true source of manufacture. No such fraud is claimed or proved. No anticipation is claimed by defendant, and if the patent is valid there is little difficulty as to infringement.

It is apparent however, that to "invent" anything in the way of a new dress design, although temporarily attractive such design may be, becomes almost impossible when one considers the enormous amount of fashion advertising, design service, magazines and the host of skilful and intelligent dressmakers.

In this case alone we have the claim made by Novak that he has conceived dozens of inventions of dresses. Each season, the claim is made, that invention after invention is brought forth, yet, the state of the art makes the correctness of such assertion more than doubtful, and while the granting of the patent carries the weight which is attached to such act of the government, the facts on the trial and the state of the art duly proved, makes one wonder how any patent on such dresses can be obtained provided true invention is required: A dress may be new, original and attractive and yet not be patentable unless this faculty of invention is likewise present.

An expert witness for defendant testified in substance that it was only a rare thing to find a real invention in the dress business.

Just how the Patent Office can satisfactorily pass on an application is hard to see.

See Rosenberg et al. v. Groov-Pin Corp., 2 Cir., 81 F.2d 46.

The real result is that the whole question is thereupon left to a court who must consider the patent, the alleged infringing dress, and the general state of the art, which the industry of counsel has gathered together and lays before his eyes.

To be sure counsel for plaintiff says that the Neufeld-Furst case, Neufeld-Furst & Co. v. Jay-Day Frocks, 2 Cir., 112 F.2d 715, should be limited to the patent then before that court and that the defendant showed each portion of the dress to be old and well known and that no such situation exists here. That the elements adopted by Novak are not in themselves old nor is the design a mere aggregation of old elements.

The defendant asserts that an examination by the court of the various fashion magazines and similar exhibits show clearly that there was no real invention by Novak but simply a skilful arrangement in pleasing form of what already existed and was disclosed, all of which was no more than skill of a dressmaker, held insufficient in Neufeld-Furst Co., Inc., v. Jay-Day Frocks, Inc., supra, and cases cited therein.

The state of the art is always available to the court. See Oswell v. Bloomfield et al., 7 Cir., 113 F.2d 377; Western States Mach. Co. v. Ferguson, D. C., 47 F.2d 775. And on the question whether there is invention or not it is indicated that it is the duty of the court to consider the general state of the art even where the defendant fails to set it up. Hill v. Wooster, 132 U.S. 693–698, 10 S.Ct. 228, 33 L.Ed. 502. See, also, Brown v. Piper, 91 U.S. 37, 23 L.Ed. 200. In these cases before me there is a quantity of such exhibits.

The experience of Novak seems to be that he turns out several hundred dress designs a year. Some of these he considers "inventions" but according to the defendant even these show merely the selection of various items from disclosures in this closely crowded art, with its veritable deluge of designs, pictures, illustrations, and suggestions, in magazines, periodicals and similar sources of suggestion.

I believe that skilful dressmakers or a designer such as Novak cannot possibly find true invention, week after week, in considerable numbers, in the dressmaking industry, despite the fact that frequently a dress is produced by him that is unusually

attractive and is successful for the season for which it is made. I have not overlooked the fact that for some of these dresses before the court there was an immediate approval by the buyers. This fact has been given due weight. This in itself is not sufficient to show invention although it should not be overlooked in testing whether there was invention or not. Standard Match Corp. v. Bell Mach. Co., 7 Cir., 83 F.2d 365.

Much as I would like to do so, in my opinion, the evidence does not justify, my holding that Novak "invented" the design of the dresses here made the object of these suits. That he was successful in presenting to the trade very attractive and new arrangements of various things that were known, goes without saying. That his ability has been exploited by defendant seems to me also plain. But his new ideas were not inventions unless anything "new" is an "invention" which is not the law.

Only recently the Circuit Court of Appeals of this Circuit (where the same plaintiff sued another alleged infringer) indicates that it has well realized the unfairness of this situation but likewise indicates that unless it was a most unusual case recourse to patents will be of little use. Jack White et al. v. Leanore Frocks, Inc., June 4, 1941, 2 Cir., 120 F.2d 113.

Each of the dresses covered by these patents of Novak have been discussed in the testimony and in the arguments in the briefs referring to such testimony. It would make this opinion unduly long to set forth in detail this testimony and these arguments. Suffice it to say that the excellent counsel for plaintiff and the equally skilful counsel for defendant fully argue their respective sides.

Defendant therefore is entitled to succeed in each of these cases and the complaint will have to be dismissed with costs.

But I should not leave this matter without indicating that, to me, this deliberate and intentional appropriation of Novak's ability and plaintiff's large expenditure of money is wrong. The remedy for this wrong, if any, has not been found. The importance of finding it is not in simply protecting new dresses but in the fact that it reaches employment and unemployment of workers in this large trade. In a sense it thus affects the public. Possibly the Legislature of the State of New York might therefore come to the conclusion, after full investigation, that this is not merely a question of attractive dresses but that it affects the labor or workers in a large trade, sometimes tending to increase and sometimes to decrease such employment and that the policy of the State should be expressed in a statute, which the courts of that state will follow, and this court, given proper jurisdiction, would likewise follow, to the effect that if one manufacturer deliberately and intentionally copies the new dresses of another manufacturer without the latter's consent or an offer of reasonable renumeration, such act would be considered unfair competition for the season for which that dress is put out. At the present time, until and unless a higher court decides that a design patent does not require the exercise of the inventive faculty to the extent that the patent law now requires in advancing the particular art, the obtaining of a patent on simply a new and attractive dress is a waste of time.

There is no doubt but that this important industry is endeavoring to find some method of protecting its designs against those who immediately appropriate same. Some are based on the assumption that design patents once issued by the Government will be given such protection at least for the season, after which all patents will be available to all of the market without charge or restriction but this leaves still undecided the question of whether there was an invention. If so, no further protection would be needed. Other methods are by distribution of labels. Combinations of manufacturers have not been successful in avoiding violation of the law against combinations. There is a real necessity for some law that will equally protect those who like the plaintiff, spend a great deal of time and money in giving the public a new and attractive dress and those who, like the defendant, give another portion of the public, who seek a more economical dress, a garment of its own design. But this should not include, during a season, an intentional and deliberate copy of the other without proper consent.

Complaints dismissed, with costs. Submit findings.