### BELDING HEMINWAY CO. v. FUTURE FASHIONS, Inc., et al.

District Court, S. D. New York.
Aug. 2, 1943.

40

Dwight, Harris, Koegel & Caskey, of New York City (Frederick W. P. Lorenzen, of New York City, of counsel), for plaintiff.

Charles Sonnenreich, of New York City, for defendant Future Fashions, Inc.

BRIGHT, District Judge.

Plaintiff seeks an injunction pendente lite restraining the defendant from advertising or offering for sale, or taking or filling orders for the sale or delivery, of dress goods claimed to infringe plaintiff's design patent No. 134490.

The patented design consists of three rows of daisy like figures, each interlocking with the other, the petals on the two outer rows being of a·white or light color with a dark center row of much the same style of figures, with the petals of the color of the center of the other two rows and the center the color of the petals on the outer rows. The rows are repeated at intervals of about 3½ inches, the intervening space having a background of a dark color dotted with polka dots about ½ inch apart. The design is very pleasant and striking, and to my untutored eye seems very attractive and unusual.

It is not disputed that letters patent were issued on December 1, 1942. On August 27, 1942, plaintiff caused its design to be registered with the Registration Bureau of the National Federation of Textiles, a trade association maintained for the purpose of supplying the trade with information as to the ownership of textile fabric designs and to prevent conflict in designs for printed rayons and silks. When the design was presented to that Bureau, it was compared with others in its field and nothing was found already in use that could be considered so similar as to be thought identical, and thereupon the design was registered for one year. Thereafter, plaintiff manufactured the design in high quality rayon textile fabric, and sold and is still selling the same to selected manufacturers for the manufacture of quality dresses. It has issued licenses to nine firms in New York City, and to one in Chicago, who have purchased some 53,000 yards of the material and made up the same into dresses which retail from $7.95 to $14.95 each. That the design was the exclusive property of the plaintiff was published by it in the "Women's Wear Daily" of July 8, 1943.

In the July issue of "Mademoiselle", a fashion magazine, an advertisement appeared over the name of the defendant, which is not a customer or licensee of plaintiff, picturing a dress made of material identical in design to that of the plaintiff's, and the dress pictured in the advertisement and priced at $4 was identical in style to a dress manufactured and sold by a licensee of the plaintiff. On June 30, 1943, plaintiff purchased from Gimbel's in New York for $4.02, a dress identical in style and design with the dresses manufactured by plaintiff's licensees and made of material identical in design with that described in plaintiff's patent, the dress bearing the label of the defendant, but being of a cheaper material. The dress was advertised by Gimbel's on July 11, 1943, the advertisement stating: "We used two identical prints of our 7.95 successes (not 7.95 quality but good quality rayon crepe), copied the 7.95 dresses line for line, flower for flower"; and in the description it was further stated "as advertised in Mademoiselle".

Plaintiff's counsel notified defendant on June 30, 1943, calling attention to the advertisement in Mademoiselle, that it contained a reproduction of a dress made of material with a design identical to plaintiff's patented design, and warning defendant the infringers would be held to strict accountability. On July 1, 1943, defendant admitted the infringement, writing: "We wish to advise you that from this time on we will not buy any more of the print belonging to your client Belding Heminway Co., and on which they have a design patent. We are very sorry that we have infringed on your client's design, but we assure you that it was not intentional, and at no time did we know that the pattern that we bought from one of the converters was a patented one"; and it promised that no more of the pattern would be purchased as of the date of the letter.

The facts stated are in no way disputed. The dress sold by defendant and that made of plaintiff's cloth are not only identical in design but are even identical in style. Not only has the defendant admittedly borrowed the design, but it has even copied the model. A plainer case of piracy and infringement could not be shown, and the uncontradicted proof shows that the defendant is still selling dresses of material of the same design and model, notwithstanding its promise of July 1st; and upon the argument, complaint was made that it had temporarily been enjoined from disposing of many thousands more; and all this without license from the plaintiff and in defiance of its notice and rights.

It needs no argument to show that the sale of identical dresses for one-half the price of plaintiff's design and model, will destroy the market for plaintiff's material, both for the plaintiff as well as for its licensees, most of whom are in the same city where defendant is marketing its product; and the effect upon the reputation of the plaintiff, as well as of its licensees, in the minds of the buying public can well be imagined. Such loss is obviously irreparable and difficult of estimate. The wrong obviously would seem to call for a remedy.

I am aware of the cases which curtail the right to an injunction pendente lite where the patent has not been adjudicated. I am also aware of the rule that the court, except in rare instances, will not enjoin unless it is confident that the patent will be sustained. Metropolitan Button Works v. Jaffe, D.C., 19 F.Supp. 860. I have also examined the several cases to which my attention has been called by defendant's counsel, from which he asserts that design patents, at least in this circuit, have not fared so well in recent years. An "oasis" for the exponents of design patents was perhaps revealed in the dictum of Judge Swan in 1928, in the case of American Fabrics Co. v. Richmond Lace Works, 2 Cir., 24 F.2d 365, 367, when he wrote: "The reassembling or regrouping of familiar forms and decorations, if the result be a design of originality and beauty, may constitute a patentable design. (Citing cases) It was apparently novel, for nothing was introduced in the way of prior art which anticipated it. We are disposed to think that to devise so pleasing a design requires sufficient artistic originality to amount to patentable invention; but it is unnecessary to pass finally upon the issue of validity, unless infringement is found." But infringement was not found in that case. See also Amrein-Freudenberg Co. v. Garfield, D.C., 6 F.Supp. 19. Perhaps that oasis was a mirage, for in quite rapid succession followed the cases of Berlinger v. Busch Jewelry Co., 2 Cir., 1931, 48 F.2d 812, 813, where a design patent for a wedding ring was involved and the court held that it did not indicate "inventive thought", it was not enough that it could be distinguished in appearance from prior designs, it "must involve the exercise of inventive faculty" and show "the degree of genius necessary for invention"; Nat Lewis Purses v. Carole Bags, 2 Cir., 1936, 83 F.2d 475, 476, where the design of a woman's purse was held not to be the product of "'invention' * * * the same exceptional talent that is required for a mechanical patent. * * * Piracy is no part of the case * * *; the plaintiff can succeed only in the event that * * * the design would also be unlawful"; Barone v. Carlton Sportswear, D.C., 1939, 30 F.Supp. 822, where a dress design was held unpatentable because it did not show the "[necessary] 'salient ability' amounting to invention"; Neufeld-Furst & Co. v. Jay-Day Frocks, 2 Cir., 1940, 112 F.2d 715, 716, where the design for a dress was held invalid because it did not show some exceptional talent, not the skill of the ordinary designer and did not require "more than the skill of a good dressmaker who had, or is chargeable with knowledge of the prior art"; Mary Muffet, Inc., v. Loma Dress Co., D.C., 39 F.Supp. 415, 417, where a dress design was stricken down under the Nat Lewis Purses and the Neufeld-Furst cases, the court finding that the dress was wholly the product of the skill of an experienced designer and did not "involve 'a step beyond the prior art requiring what is termed "inventive genius"', nothing new or striking or of any great novelty, and nothing which amounted to invention; White v. Leanore Frocks, 2 Cir., 1941, 120 F.2d 113, where an order denying a motion for an injunction pendente lite was affirmed in an action brought to recover for an infringement of a dress design patent, the Second Circuit holding that the validity of such patent depended upon the same factors as that of a mechanical patent, there the design seemed to be a simple variant upon old themes, such as capable designers can turn out almost by permutation of old themes. Reference was made in that case

to Fashion Originators Guild v. Federal Trade Commission, 312 U.S. 457, 668, 61 S.Ct. 703, 85 L.Ed. 949, stating that it was the latest, and presumably the last, effort of dress designers to get some protection against piracy of their designs; that what designers needed was rather a statute which would protect them against plagiarism. In White v. Lombardy Dresses, D.C. 1941, 40 F.Supp. 216, 217, Judge Inch apparently sounded the death knell for design patents for dresses when he wrote: "It is apparent however, that to 'invent' anything in the way of a new dress design, although temporarily attractive such design may be, becomes almost impossible when one considers the enormous amount of fashion advertising, design service, magazines and the host of skilful and intelligent dressmakers." And finally, Gold Seal Importers v. Morris White Fashions, 2 Cir., 1941, 124 F.2d 141, 143, held a lady's handbag was not infringed and the complaint was dismissed, although it was admitted that the bag had a uniqueness of appearance and an aesthetic appeal not found in any prior patent or publication; but that was not enough, the design must require some exceptional talent beyond the range of the ordinary designer, and the statement of the trial court that the development of the design there in question "required nothing more than ordinary skill rather than creative art" was affirmed.

None of the cases except the first two, however, related to a design in cloth, in which the artistry of the designer may have full sway. Here it must be conceded that the use of daisies and polka dots in dress materials is old, but the combination is artistic and has the added advantage that it can be used either horizontally in the bodice or waist, or vertically in the skirt, a combination particularly effective to set off and enhance feminine charm. It seems to me that it shows exceptional talent.

■ But there is something else which is found in this case which I have not found in any of the cases cited. The accused dress material is an exact copy of the design of the plaintiff. That is admitted. In addition, defendant writes that it has "infringed" the plaintiff's design upon which it has a design patent. That admission carries with it, in my judgment, an obvious admission that the patent is valid. It could not be infringed if the patent was invalid. This admission, coupled with the fact that the patent is presumptively valid

(Jacob Elishewitz & Sons Co. v. Bronston Bros. & Co., 2 Cir., 40 F.2d 434, 435; Eloesser-Heynemann Co. v. Bayly-Underhill Mfg. Co., D.C., 29 F.2d 305, 308; Talge v. Sears Roebuck & Co., D.C., 48 F.Supp. 723, 724; Swanfeldt v. Waldman, D.C., 50 F.2d 445), and coupled with the further fact that the defendant has concededly adopted the design and made commercial use of it, clearly because it has a popular appeal, is novel, saleable, attractive and unusual, and thus imitated it (which where a patent is copied is more than sincere flattery), there is a strong presumption of inventive novelty as well as of utility. Salt's Textile Mfg. Co. v. Tingue Mfg. Co., D.C., 227 F. 115–117; Remington Cash Register Co. v. National Cash Register Co., D.C., 6 F.2d 585, 631; Gandy v. Main Belting Co., 143 U.S. 587, 596, 12 S.Ct. 598, 36 L. Ed. 272; Du Bois v. Kirk, 158 U.S. 58–64, 15 S.Ct. 729, 39 L.Ed. 895.

The plaintiff's motion for injunction pendente lite is, therefore, granted. The amount of the bond to be posted by the plaintiff will be fixed when the order hereon (which should comply in all respects with Rule 65(d), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c) is settled on notice.