The H. W. GOSSARD CO., Plaintiff,

v.

The NEATFORM CO., Inc., Defendant.

The H. W. GOSSARD CO., Plaintiff,

v.

PRIMROSE FOUNDATIONS, Inc., Defendant.

The H. W. GOSSARD CO., Plaintiff,

v.

AMERICAN BRASSIERE CO., Inc., Defendant.

The H. W. GOSSARD CO., Plaintiff,

v.

CUPID FOUNDATIONS, Inc., Defendant.

The H. W. GOSSARD CO., Plaintiff,

v.

FORTUNA FOUNDATIONS, Inc., Defendant.

United States District Court
S. D. New York.
July 20, 1956.

Donald Malcolm, New York City, for plaintiff, Arthur H. Boettcher and Arthur C. Johnson, Chicago, Ill., of counsel.

Armand E. Lackenbach, New York City, for defendants.

DAWSON, District Judge.

This is an action brought by the plaintiff, the H. W. Gossard Co., against five defendants for infringement of United States Design Letters Patent No. 174,-054. The subject matter of the design patent is an ornamental design for a panty girdle, a woman's undergarment. In their respective answers, defendants specifically deny validity of the patent in question and counterclaim for a declaratory judgment of invalidity of the patent. The defendants have not questioned infringement if the patent is valid. Therefore, the sole issue is that of validity.

The design patent in suit was applied for on April 2, 1954 by Mary F. Peck, a designer of considerable experience employed by the plaintiff, who assigned it to the plaintiff. The patent was issued on February 15, 1955.

The claim of the patent is for an "ornamental design for a panty girdle" substantially as shown in the drawing accompanying the specifications of the patent. This drawing is:

A panty girdle is, of course, not a novel idea, nor is the center front panel of the garment a novel idea, and no claim is made by the plaintiff with respect

thereto. It was also admitted that an elastic edging or decoration around the perimeter of each leg opening is not new.

The plaintiff contends, however, that the new element of the design is that the elastic edging which constitutes the perimeter of the leg openings does not end when it completes the perimeter, but extends in a continuing line until it reaches the center front panel of the girdle; and that, therefore, the edging, instead of being circular, comes to an acute angle with the line of one side of the angle carried up directly and continuously to the front panel. It is contended that this makes a more pleasing and decorative design than those which had previously been used.

There is no doubt that this garment was widely advertised by the plaintiff and met with great commercial success in a highly competitive field. The article was first put on the market in January, 1954. In that month, the sales were $44,364. They rapidly increased. By November, 1954, the aggregate sales had amounted to $1,208,847. In the next twelve-month period, the aggregate sales were $2,174,877. The aggregate sales up to the end of April, 1956 amounted to $4,203,465.

In the eleven months ending November, 1954, the sale of this panty girdle constituted 58.8% of the sales of panties made by the plaintiff. However, in the period from November, 1955 through April, 1956, the percentage had increased so that the sale of this particular design constituted 72.6% of the entire panty sales of the plaintiff. In this period, those sales constituted 18.2% of the entire sales of all articles sold by the plaintiff.

Apparently, the success of the design was not overlooked by competitive manufacturers. The design was copied by other manufacturers, some of whom took licenses from the plaintiff, and others of whom desisted when threatened with infringement actions. The defendants in the present case have admitted that if the patent is valid, they have infringed it. The president of Fortuna Founda-

tions, Inc., one of the defendants, testified that his company was forced into manufacturing this particular design "because our direct competitors were making it and our stores made requests to make it."

None of the prior art shown and produced at the trial had the particular decorative design illustrated in this patent. Some of the prior art showed, of course, decorative edging to the perimeters of the leg openings. None of them, however, had the element of the perimetrical edging of the leg openings being carried in a continuous line to the center panel with the resulting acute angle involved in the patent in suit.

The requirements of patentability for design patents are found in § 171 of the Patent Code, 35 U.S.C. § 171, which reads:

> "§ 171. Patents for designs
>
> "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.
>
> "The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."

The Court finds as a fact that the patent in suit is for a "new, original and ornamental design for an article of manufacture" within the meaning of these words in the statute.

However, § 171 also provides that the other provisions of the Title relating to patents for inventions shall apply to patents for designs. One of the other conditions is found in § 103 of the Patent Code, 35 U.S.C. § 103, which reads as follows:

> "§ 103. Conditions for patentability; non-obvious subject matter
>
> "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the

prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

This raises the further question as to whether the differences between the subject matter sought to be patented and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains".

This provision codifies a standard which had often been used in the decisions of the Courts. See Senate Report No. 1979, 82d Cong., 1952, 2 U.S.Code Cong. & Admin.News 1952, p. 2400. The thought was long ago expressed in the opinion of Mr. Justice Bradley in Atlantic Works v. Brady, 1883, 107 U.S. 192, 199, 2 S.Ct. 225, 231, 27 L.Ed. 438, when he said:

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention."

The Court of Appeals of this Circuit, as long ago as 1931, stated:

"A design is not patentable merely because it can be distinguished in appearance from prior designs. Its creation must involve the exercise of inventive faculty." Berlinger

v. Busch Jewelry Co., Inc., 2 Cir., 48 F.2d 812, 813.

In Nat Lewis Purses v. Carole Bags, Inc., the Court of Appeals of this Circuit said:

"* * * a design patent must be the product of 'invention,' by which we meant the same exceptional talent that is required for a mechanical patent." 2 Cir., 1936, 83 F.2d 475, 476.

In Neufeld-Furst & Co. v. Jay-Day Frocks, 2 Cir., 1940, 112 F.2d 715, 716, the Court of Appeals said:

"In this circuit it is firmly established that more is required for a valid design patent than that the design be new and pleasing enough to catch the trade; it must be the product of 'invention,' by which is meant that conception of the design must demand some exceptional talent beyond the skill of the ordinary designer."

This then presents to the Court the difficult question as to whether the admittedly new feature of the design of the patent in suit is one which would have been obvious to an ordinary designer at the time the invention was made.

The question as to what might or might not have been obvious to an ordinary designer is one with which a District Court Judge is ill-equipped to deal. Mr. Justice Frankfurter, a number of years ago, pointed out that

"It is an old observation that the training of Anglo-American judges ill fits them to discharge the duties cast upon them by patent legislation." Marconi Wireless Telegraph Co. of America v. United States, 1943, 320 U.S. 1, at pages 60–61, 63 S.Ct. 1393, at page 1421, 87 L.Ed. 1731.

See also the comment of Judge Learned Hand in Parke-Davis & Co. v. H. K. Mulford Co., C.C.S.D.N.Y.1911, 189 F. 95, 115, affirmed in part & reversed in part 2 Cir., 1912, 196 F. 496:

"I cannot stop without calling attention to the extraordinary condition of the law which makes it pos-

sible for a man without any knowledge of even the rudiments of chemistry to pass upon such questions as these."

But since Congress has made the Judges pass upon the determination of what is "ordinary skill in the art", Judges must, as Mr. Justice Frankfurter said in the Marconi Wireless case, "overcome their scientific incompetence as best they can".

This is a difficult task, for as one commentator has recently pointed out:

"Extreme cases aside, it is virtually impossible to make an abstract determination of whether a particular change is or is not within the 'skill of the art'—for the level of such skill is itself highly indefinite." Patent Office Performance in Perspective, by George E. Frost, 54 Mich.L.Rev. 591, 593 (1956).

The statute does not purport to set forth the criteria by which this issue is to be determined. The question as to what is obvious, and hence unpatentable, is of necessity one of judgment. See Commentary on the New Patent Act, by P. J. Federico, 35 U.S.C.A. page 1 at page 23; Invention and the "Obvious", by Hon. Clarence G. Galston, 13 F.R.D. 463.

It is with some trepidation that I venture to determine what is the "ordinary skill" of designers of intimate articles of feminine apparel because such skill, at least to a mere man, seems to have no ordinary limitations.

However, here we are faced with the question as to whether the change of the angle and length of a decorative edging around perimeters of the leg openings is within the skill of an ordinary designer. It is part of the function of the ordinary designer to change and alter decorative features of garments from time to time so as to add a new feature which will be pleasing to the eye. Such changes in decorations are made constantly by designers of women's clothes.

The placing of an ornamental elastic border around the perimetrical leg openings was, as heretofore been said, not new in the art. To carry one of the ends of this border up to the central panel and thereby change the angle was merely the alteration or addition of a decorative item which would not have required inventive genius. The fact that this had not been done heretofore is not evidence of some exceptional talent beyond the skill of the ordinary designer.

Not every new idea in decorating can be considered an "invention". Each merchandising season produces, in the field of women's garments, new and varied designs. In fact, it has been said that to invent anything in the way of a new dress design, however temporarily attractive such design may be, becomes almost impossible when one considers the enormous amount of fashion advertising, design service, magazines, and the host of skillful and intelligent dressmakers. White v. Lombardy Dresses, D.C.S.D.N.Y.1941, 40 F.Supp. 216. It may be that it is for reasons similar to this that there has not been a design patent upheld by the Court of Appeals in the Second Circuit subsequent to 1926. See Walker, Patents (Deller ed. 1937), 1955 Supplement §§ 134, 135.

■ To sustain a patent for every slight change in decorative design would create a series of little monopolies in the decorating field which would hamper rather than help the development of the arts. Such is not the intent of the Patent law.

■ Nor does commercial success alone indicate that the design is patentable. Jungersen v. Ostby & Barton Co., 1949, 335 U.S. 560, 567, 69 S.Ct. 269, 93 L.Ed. 235; Belding Heminway Co. v. Future Fashions, 2 Cir., 1944, 143 F.2d 216, 217.

### Findings.

■ The Court finds as a fact that design patent No. 174,054 is a new, original, and ornamental design for an article of manufacture.

The Court further finds as a fact that the subject matter of the design as a whole would have been obvious at the

time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

The Court concludes that design patent No. 174,054 is invalid and that judgment should be entered for the defendants.

This opinion shall constitute the findings of fact and conclusions of law of the Court.